IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARYLAND ACCOUNTING SERVICES, INC., *et al.* | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Case No. CCB-11-CV-00145 |
| CONTINENTAL CASUALTY COMPANY, | * * * | |
| Defendant. | * | |

******

## MEMORANDUM

Plaintiffs Maryland Accounting Services, Inc. ("MAS") and Ivan A. Jaramillo ("Jaramillo") filed a complaint for declaratory judgment in state court against Defendant Continental Casualty Company ("Continental"). Continental has removed the declaratory judgment action to this court, based on diversity of citizenship. MAS and Jaramillo seek a court ruling that Continental, which underwrites Plaintiffs' business insurance policy, has a duty to defend and indemnify Plaintiffs in an underlying lawsuit, *Injured Workers' Insurance Fund v. Jaramillo*, Case No. 03-C-07-014047, currently pending in the Circuit Court for Baltimore County. Both parties have moved for summary judgment. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, Continental's motion for summary judgment will be granted and Jaramillo's and MAS's motion will be denied. Declaratory judgment will be entered for Continental.

**I. Factual Background**

MAS is a Maryland corporation with a principal place of business in Baltimore. Jaramillo, a Maryland resident, works as an accountant for MAS. In January 2007, MAS

1

obtained a business insurance policy ("the Policy") from insurer Continental, an Illinois corporation with a principal place of business in Illinois. MAS's coverage under the Policy began on January 19, 2007 and included coverage for prior acts committed by MAS and its employees from January 19, 2006 until the Policy's start date. The Policy requires Continental to defend and indemnify MAS and its employees in lawsuits relating to professional services they render. These contractual duties are limited by a number of specific exclusions and by limitations on the definition of "professional services."

On or about December 20, 2007, Jaramillo and MAS were served with a complaint filed by the Injured Workers' Insurance Fund ("the Fund"). The Fund, an independent state agency, is a non-profit insurer that offers workers' compensation insurance to Maryland employers. The Fund considers a number of factors when determining what premium to charge an insured business; these factors include the number of employees an insured business has, the size of the business's payroll, and whether the business uses uninsured subcontractors.

In the case filed by the Fund (the "*Injured Workers' Insurance Fund* case"), the Fund alleges that MAS, Jaramillo, and a number of third parties defrauded the Fund by under-reporting the number of employees, payroll size, and use of subcontractors for a variety of small Maryland businesses. The Fund's complaint includes several different theories of recovery, including that Jaramillo and MAS either negligently or intentionally provided advice and services that allowed the other defendants to defraud the Fund of over $1 million in insurance premiums.

On December 27, 2007, Jaramillo and MAS notified Continental of the *Injured Workers' Insurance Fund* case and asked Continental to defend and indemnify Jaramillo and MAS pursuant to the Policy's terms. On February 1, 2008, Continental refused to either defend or

indemnify Plaintiffs, stating that the conduct alleged in the Fund's complaint falls outside of the scope of the Policy.

## II. Motions for Summary Judgment

### A. Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

In Maryland, "[t]he obligation of an insurer to defend its insured under a contract provision such as here involved is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend." *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 850 (Md. 1975). "Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer

still must defend if there is a potentiality that the claim could be covered by the policy." *Id.*; *see also Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566, 570 (Md. 1997).

To determine whether a liability insurer has a duty to provide its insured a defense in a lawsuit, Maryland courts ask the following two questions: "(1) What is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) Do the allegations in the court action potentially bring the claim within the policy's coverage?" *St. Paul Fire & Marine Ins. Co. v. Pryseski,* 438 A.2d 282, 285 (Md. 1991). In other words, "[a] court must ascertain the scope and limitations of coverage under the ... insurance policy and then determine whether the allegations in the [underlying] action would potentially be covered under the policies." *Utica Mutual Insurance Co. v. Miller,* 746 A.2d 935, 939 (Md. Ct. Spec. App. 2000) (quoting *Aetna Cas. & Sur. Co. v. Cochran*, 651 A.2d 859, 862 (Md. 1995).

Maryland courts analyze insurance contracts just as they do other contracts. *Fed. Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.*, 769 F.Supp.2d 865, 871-72 (D. Md. 2011). "The primary principle of construction is to apply the terms of the insurance contract itself," *Bausch & Lomb, Inc. v. Utica Mutual Insurance Co.,* 735 A.2d 1081, 1089 (Md. 1999), and the contract's words are given their "usual, ordinary and accepted meaning" unless there is evidence that a special or technical meaning was intended by the parties. *Cheney v. Bell Nat'l Life Ins. Co.,* 556 A.2d 1135, 1138 (Md. 1989). If the contract's language is plain and unambiguous, the court will determine the meaning of the contract's terms as a matter of law. *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.,* 889 A.2d 387, 393 (Md. 2006).

### B. Analysis

Jaramillo and MAS argue that Continental must defend and indemnify the *Injured Workers' Insurance Fund* case because the allegedly wrongful acts attributed to Jaramillo and

MAS qualify as professional services covered by the Policy. Continental argues that the acts alleged in the Fund's complaint do not qualify as covered professional services, and further argues that those acts are specifically excluded by the Policy's financial products exclusion. The plain language of the contract supports Continental's position.

To determine whether Continental has a duty to defend and indemnify Jaramillo and MAS in the *Injured Workers' Insurance Fund* case, this Court must first determine the meaning of the Policy's terms, and then must determine whether the services attributed to Plaintiffs are covered by the Policy. The Policy states that Continental has "the right and duty to defend any claim, even if any of the allegations of the claim are groundless, false, or fraudulent." Schirott Dec. Ex. A., March 4, 2011, ¶ II. B. While it will not cover "any claim based on or arising out of a dishonest, fraudulent, criminal, or malicious act by [the insured and/or its employees]," the Policy does require Continental to provide the insured and/or its employees with "a defense of such claim unless or until the dishonest, fraudulent, criminal or malicious act has been determined by any trial verdict, court ruling, regulatory ruling or legal admission . . . ." *Id*. at ¶ II.D. The Policy defines "claim" as "a demand received by [the insured and/or its employees] for money or services naming [the insured and/or its employees] and alleging an act or omission . . . arising out of the rendering of professional services." *Id*. at ¶ I.

The Policy also defines the term "professional services." Professional services include, among other things, preparing financial or accounting records; preparing, assembling or compiling financial statements; preparing payroll records and payroll checks; and offering services as a life insurance agent. *Id*. at ¶ I, Financial Planning Endorsement §2.

In the *Injured Workers' Insurance Fund* case, the Fund accuses MAS and Jaramillo of negligently or intentionally preparing fraudulent workers' compensation insurance applications

on behalf of several MAS clients.  The Fund alleges that these workers' compensation insurance applications included false financial statements and payroll records prepared by Jaramillo and MAS.  The parties debate whether the preparation of workers' compensation insurance applications – including the preparation of financial statements and payroll records – qualifies as the provision of professional services, and thus whether the acts alleged in the underlying lawsuit trigger Continental's duties to defend and indemnify.  Even if the services that MAS and Jaramillo allegedly provided would otherwise qualify as professional services, those services are excluded from the Policy by its financial products exclusion.

The financial products exclusion notes that "this Policy does not apply to . . . any claim based on or arising out of . . . servicing of or providing advice on any products that are not financial products." *Id*. at Financial Planning Endorsement §3.  "Financial products" are a small group of items, including U.S. treasury bonds, mutual funds, and variable life insurance contracts. *Id.* at §1.  Workers' compensation insurance policies are not included in this exclusive group.

As mentioned above, the Fund alleges that MAS and Jaramillo advised their clients to obtain workers' compensation insurance and prepared their clients' workers' compensation insurance applications.  Even services that might otherwise be considered "professional services" under the Policy, such as the preparation of payroll records, were rendered in the specific context of helping clients obtain workers' compensation insurance.  The text of the Fund's complaint demonstrates that all services that are the subject of the *Injured Workers' Insurance Fund* case were services rendered in connection with workers' compensation insurance, not in connection with financial products.

> 331.    Defendant Jaramillo and his company instructed, advised, guided and led the Defendants in applying to IWIF for workers' compensation insurance.

> In this capacity Jaramillo and MAS prepared financial statements, payroll records and other documentation for the Defendants, negligently set the Defendants on a course that allowed them to defraud IWIF out of over $1 million in insurance premiums.
>
> . . .
>
> 333. Defendant Jaramillo's negligent actions in this regard included, but were not limited to, the following: assisting the other Defendants in creating and submitting false applications . . .; advising and enabling the other Defendants, through financial statements, payroll records and other documentation that IWIF relied upon in issuing Workers' Compensation insurance, to falsely deny the use of uninsured subcontractors and to understate both the number of the business's employees and its payroll; advising and enabling the other Defendants to repeatedly open an entity and then close it within one year in order to avoid paying workers' compensation insurance premiums.

Pl.'s Mot. for Summ. J., Exhibit A, ¶¶ 330-31, 333. The Fund's complaint concerns services that Jaramillo and MAS allegedly rendered in connection with a product – workers' compensation insurance – that is not a financial product as defined by the Policy. Such services are specifically excluded from the scope of the Policy. Because the services attributed to Jaramillo and MAS are specifically excluded from coverage, there is no potentiality that the claims made in the *Injured Workers' Insurance Fund* case could be covered by the business insurance policy MAS obtained from Continental. Therefore, Continental has no obligation to defend and/or indemnify MAS and Jaramillo in the *Injured Workers' Insurance Fund* case. Continental's motion for summary judgment must be granted.

### III. Conclusion

For the foregoing reasons, MAS's and Jaramillo's motion for summary judgment will be denied and Continental's motion for summary judgment will be granted. A separate Order follows.

Dated: November 21, 2011 _____/s/_____
Catherine C. Blake
United States District Judge